```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

DIGNA RIVERA,

               Plaintiff,          05-CV-6198T

v.                                                **DECISION**
                                                 **and ORDER**

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

```
_____
```

## INTRODUCTION

    Plaintiff, Digna Rivera,("plaintiff" or "Rivera"), filed this action seeking review of a final decision by the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Benefits ("SSI") under Title XVI of the Social Security Act ("the Act"). Jurisdiction to review the Commissioner's decision arises under 42 U.S.C. § 405(g). On January 25, 2006, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff is not eligible for SSI. On February 23, 2006, the plaintiff moved for judgment on the pleadings.

    For the reasons that follow, this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the defendant's motion for judgment on the pleadings is granted.

PROCEDURAL HISTORY

The plaintiff filed this application for SSI on July 24, 2001, alleging her disability since January 1, 1998. (T. 53-55) [1]. The plaintiff's application for SSI was denied on February 4, 2002 (T. 29-31). On July 16, 2004, a hearing was held before Administrative Law Judge ("ALJ") Nancy Lee Gregg at which the plaintiff appeared with counsel and testified through a Spanish interpreter. (T. 347-366). On September 23, 2004, the ALJ considering the case *de novo* found that the plaintiff was not disabled and that she could return to her past work as an office cleaner. (T. 10-27). On March 4, 2005, the ALJ'S decision became the final decision of the Commissioner when the Appeals Council denied the plaintiff's request for review. (T. 5-8).  Thereafter, the plaintiff timely filed this civil appeal.

BACKGROUND

A. Non-Medical Evidence and Hearing Testimony

The plaintiff is a 52 year old woman with an eighth grade education. (T. 53, 71). She was born in Puerto Rico and came to the United States in 1965. (T. 351). She reported that she could read and write in English and speak to some extent in English (T. 64-66). She has been employed as a cleaner, a factory worker and a laundry worker. (T. 352-355). The plaintiff reported that as a

---

[1] All citations "T" refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer, which include, *inter alia*, plaintiff's medical records, a transcript of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff SSI.

2

cleaner her work required her to walk, stand, stoop, kneel, crouch, handle big items, and lift weights as heavy as ten pounds. (T. 66). She has not worked since 1997 alleging back problems. (T. 65). The plaintiff has reported that she lives alone, shops, cooks, goes to family picnics, walks, takes the bus, and pays her rent and bills. (T. 74-78).

The plaintiff complains of knee pain which was being treated with medication. (T. 356). She also complains of back pain that comes and goes. (T. 357). She also complains of heel pain. (T. 358). The plaintiff testified that she was on thyroid medication which was not effective and that she was seeing a therapist for depression over the loss of her son. (T. 359). She further testified that she last used cocaine in January of 2004, but that she uses an asthma inhaler every day. (T. 364-65).

B. <u>Medical Evidence</u>

On March 27, 1997, the plaintiff reported to her treating physician, Dr. Hillman, that she had been in a motor vehicle accident two to three years prior and had experienced back pain which forced her to quit her janitorial job. (T. 244).

In February 1998, the plaintiff returned to Dr. Hillman to have disability forms completed. In the interim, she had right knee arthroscopy, with a diagnosis of chondromalacia, non-inflammatory effusion. (T. 243).

On August 5th, 1998, Dr. Cruse diagnosed the plaintiff with hyperthyroidism as well as crepitus in the knees. However, the

plaintiff had failed many times to have a thyroid scan performed. (T. 238-39).

On May 26, 1999, the plaintiff saw Dr. Cruse complaining of knee pain, however, she had forgotten to have her knees x-rayed. (T. 233). Her thyroid scan had been normal. Id. Dr. Cruse refused the plaintiff's request for hydrocodone (she had tried some from her sister and liked it) because it was not appropriate for a chronic condition. (T. 232).

On August 23, 2000, the plaintiff saw Dr. Hillman. (T. 215). The cause of her hyperthyroidism was still unclear. Id.

On January 18, 2001, the plaintiff had missed several appointments but finally went for an office visit to be treated for nosebleeds and a sore throat. (T. 213).

On April 16, 2001, the plaintiff was examined by Dr. Hillman for complaints of knee pain and shortness of breath. (T. 211). She was referred to an endocrinologist. (T. 210-211).

On August 13, 2001, the plaintiff complained of shortness of breath and was assessed with possible asthma. (T. 207).

On August 13, 2001, the plaintiff's lungs were clear on examination but her symptoms suggested an obstruction. (T. 204). She was again referred to an endocrinologist. Id.

By August 20, 2001, the plaintiff reported that she was breathing better with an inhaler but still reported knee pain. (T. 205).

On October 8, 2001, the plaintiff underwent a consultative examination by Dr. Samuel Balderman. (T. 158-60). The plaintiff reported repeated shortness of breath for ten years and asthma, and seven years of non radiating back pain but no MRI evaluations. Id. She reported to have undergone arthrosporic right knee surgery in 1997. Id. She reported no history of alcohol or drug use, but smoked a half of pack of cigarettes each day. Id. The plaintiff had a benign physical examination, a normal chest x-ray and was diagnosed with a history of asthma and thyroid disease. (T. 160-161). Dr. Balderman opined that he could put no limitations on the plaintiff. Id.

On November 12, 2001, the plaintiff reported to Dr. Hillman upper back pain and that Advil helped with the pain. (T. 202-203).

On November 12, 2001, the plaintiff underwent a psychiatric evaluation by John Thomassen, Ph.D. (T. 169-175). The plaintiff denied any alcohol or drug abuse or psychiatric problems. Id. She did mention that she was occasionally sad because her son was killed in a drug deal five years earlier. Id. He noted that her thought process was coherent and goal directed with no evidence of a thought disorder. Id. After the examination, the doctor reported that she should be able to perform rote tasks and follow simple directions. She was diagnosed with dysthmic disorder and anxiety disorder. Id.

On December 12, 2001, Dr. Hillman noted that the plaintiff's chronic complaint was of shortness of breath but that there was no

5

clear exam ever showing significant asthma signs. (T. 174-75). The doctor noted hypothyroidism, and chronic knee and low back pain. She opined that the plaintiff was limited to a small amount of walking secondary to her knee pain. Id.

Dr. Hillman completed a employability assessment which listed the plaintiff's medical conditions as chronic shortness of breath, hyperthyroidism, chronic knee and back pain. She noted that the plaintiff had missed several appointments for pulmonary tests and endocrine studies. Further, she indicated that the plaintiff was moderately limited in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, and climbing. (T. 174). She opined that the plaintiff was limited to short amounts of walking although she could do a job with mainly seated activities. (T. 175).

On December 21, 2001, a psychiatric review was completed by Daniel Mangord, M.S. and reviewed by psychiatrist Hillary Tzetzo. (T. 176-90). Dr. Mangord concluded that the plaintiff could perform unskilled work. (T. 190).

Dr. Janis Dale reviewed the plaintiff's file at the request of a state agency analyst and noted that the plaintiff had residual functional capacity for work requiring a medium level of exertion. (T. 197).

Dr. Hillman noted that the plaintiff had hypothyroidism and had missed all of her endocrine appointments. (T. 200).

On July 15, 2002, the plaintiff saw Dr. Hillman for back and knee problems and headaches. (T. 284-85). The doctor diagnosed chondromalcia with patella femoral pain. Id. X-rays revealed mild degenerative arthritis above both knees. (T. 323).

On February 10, 2003, the plaintiff saw Dr. Hillman for back pain and a swollen ankle. (T. 281). She was given medication for her back pain. Id.

On May 2, 2002, the plaintiff complained to Dr. Hillman of feeling tired, nausea, knee pain, and a cough. (T. 283).

On July 15, 2002, Dr. Hillman saw the plaintiff and the examination revealed knee pain consistent with patella femoral pain and quadriceps tendonitis. (T. 285). X-rays of the knees showed mild degenerative arthritis. (T. 323).

On July 25, 2002, the plaintiff was seen for a follow up visit by Dr. Hillman and the examination revealed tenderness in her knees. (T. 287). The plaintiff was taking Celebrex, Tylenol #3, and was given Synthroid for her hypothyroidism. Id.

On October 7, 2002, Dr. Hillman noted tenderness and edema in the plaintiff's right ankle. (T. 290-91). The plaintiff reported being sad and sometimes wanting to die. Id.

On November 20, 2002, the plaintiff was seen for foot pain. (T. 293). She was also to start Paxil for depression. Id.

On February 6, 2003, the plaintiff was diagnosed with plantar facitis exacerbated by poor support in her shoes and flat feet. (T. 296). The plaintiff was advised to get orthotics. Dr. Hillman noted

7

that "overall the patient is a 49 year old woman with multiple complaints at every visit and problems with compliance with follow up visits." (T. 298).

On March 10, 2003, the plaintiff saw Dr. Hillman again complaining of foot pain. (T. 300). She had failed to get the recommended orthotics. Id.

On April 11, 2003, the plaintiff had not gotten orthotics. (T. 302.). X-rays of her ankles showed no evidence of fracture or dislocation. (T. 321-22). She was to start Zoloft for depression and schedule counseling. Id.

On May 22, 2003, the plaintiff told Dr. Hillman that she had seen a podiatrist for custom orthotics. (T. 304).

On June 5, 2003, the plaintiff reported being happier on Effexor and was sleeping well. (T. 306). She was still not wearing orthotics. (T. 307).

On July 6, 2003, Dr. Chance took over care of the plaintiff. (T. 310-11).

On September 2, 2003, a concern was noted that the plaintiff was not complying with taking the synthroid because her TSH levels were increased. (T. 311).

On October 3, 2003, the plaintiff saw Dr. Patil at the Rochester Mental Health Center for a psychiatric assessment. (T. 342-43). She reported having four children and that she has been depressed on and off for a "fairly long period of time." (T. 342). She reported to have been using cocaine for the last seven years

and using cocaine two weeks before the assessment. The plaintiff also reported drinking on weekends and losing control so she had stopped drinking. Id. The exam revealed that the plaintiff needed to be in treatment for her depression but that it was unclear whether her depression was related to her cocaine use. (T. 343). She was started on Lexapro and Traxodone.

On November 4, 2003, the plaintiff saw Dr. Berlowitz and reported that she had been arrested for allegedly stabbing her sister the year before. (T. 340-41). She told the doctor that she was on welfare and that she had been seeking SSI for asthma and arthritis. Id. The doctor assessed the plaintiff with bipolar disorder, depression possibly secondary to cocaine abuse, alcohol abuse in early remission was to be ruled out and malingering because of her seeking SSI was to be ruled out. Id.

On November 7, 2003, Dr. Chance completed an employability assessment. (T. 272-278). She characterized the plaintiff's low back pain and knee pain as disabling. Id. She opined that the plaintiff could occasionally lift less than ten pounds, and stand or walk two hours out of an eight hour day. Id.

On February 2004, the plaintiff saw a counselor, Gary Mount ("Counselor Mount") and reported having two children this time. (T. 338). She stated that she was seeking SSI and acknowledged using cocaine that day. Id. Counselor Mount noted that the plaintiff could be "exaggerating physical symptoms" because she was trying to qualify for SSI. Id. The diagnostic review showed that the

9

plaintiff was possibly manic and possibly high on cocaine. Id. Counselor Mount spoke to the plaintiff's representative for SSI who agreed that she had not participated in treatment long enough to judge psychiatric disability. Id.

On March 22, 2004, the plaintiff saw Mr. Mount for counseling. (T. 335-37). She told the counselor that she had used cocaine once per week but had not used it for months. Id. She also acknowledged alcohol abuse. Id. Counselor Mount noted that the plaintiff had either bipolar disorder or a disorder precipitated by cocaine. Id. He also noted that she was there to make a case to get SSI but would benefit from treatment. Id. When the plaintiff sought Valium on the visit, he noted that it could be a bad sign of drug-seeking behavior. Id.

On April 5, 2004, the plaintiff was evaluated by Dr. Berlowitz. (T. 334). The plaintiff admitted to using one to three bags of cocaine per week and to poor compliance with her medication and appointments. Id. She reported that Depakote helped her but that she had no benefit when using cocaine. Id. She was warned that she would have one more chance for an appointment and medication from the center. (T. 334)

On May 3, 2004, the plaintiff saw Dr. Berlowitz. (T. 311). She was "a little better" on Depakote and she denied any cocaine use. Id. It was reported that her concentration was good, her energy level was okay, she was sleeping well, and had decreased mood swings. Id. The examination revealed an organized thought process

and goal directed thought content. Her memory was intact. Id. Her insight, judgment, impulse control and concentration were good. Id. She was diagnosed with bipolar disorder not otherwise specified and cocaine abuse, in early remission by report of the plaintiff. Id.

## LEGAL STANDARD

### A. Jurisdiction and Scope of Review

42 U.S.C. § 405(g), grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

### B. Legal Standards

The plaintiff maintains that she is entitled to SSI benefits as provided in Title XVI of the Act. Entitlement to benefits under the Act is conditioned upon compliance with all relevant requirements of the statute. SSI benefits may not be paid unless a claimant meets the income and resource limitations of 42 U.S.C. §§

1382a and 1382b. Further, a claimant must demonstrate the inability to engage in a substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

Furthermore, a claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); see 20 C.F.R. § 416.920.

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the

fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. <u>Bush v. Shalala</u>, 94 F.3d 40, 45 (2d Cir. 1996).

<u>DISCUSSION</u>

Here, the ALJ properly followed the five step procedure. The ALJ found that the plaintiff: (1) had not engaged in substantial gainful employment at any time since July 24, 2001, the date she filed for SSI; (2) suffered from the following medically determinable severe impairments-mild degenerative disc disease, mild chondromalacia patella, mild obstructive lung disease, an affective disorder (at various times diagnosed as dysthymic disorder, bipolar disorder aggravated by cocaine use or major depression) and poly substance abuse (cocaine and alcohol) and from the following non-severe impairments plantar faciitis, flat feet, history of mild cardiomegaly, some anxiety, Graves disease, and gastroesophageal reflux disease; (3) did not have an impairment meeting or medically equivalent to one of the listed impairments in Appendix 1 of the C.F.R, Part 404, Subpart P; and (4) could perform her past relevant work as a cleaner in a bank with lifting and carrying of no more than ten pounds and as a factory worker where she performed light work. (T. 16-27).

The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled, her motion for judgment on the pleadings should be granted.

The plaintiff contends that although the ALJ followed the five step procedure, she improperly concluded that she was not disabled. (T. 16-27). Specifically, the plaintiff argues that the ALJ erred when she: 1) failed to afford controlling weight to the treating physicians; 2) failed to afford appropriate credibility to the plaintiff's allegations; 3) erred in determining that she can return to her past relevant work; and 4) failed to consider the combined effect of Ms. Rivera's impairments. Therefore, the plaintiff argues that because the ALJ erred, the determination should be reversed or in the alternative, it should be remanded for proper consideration of these standards to a different ALJ who has not already prejudged her credibility. This Court finds that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled.

The ALJ did consider the opinion of the plaintiff's treating physician Dr. Hillman and Dr. Chance. However, an ALJ will give controlling weight to opinions from treating sources only if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with any other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

Here, it was reasonable for the ALJ to give little evidentiary weight to Dr. Hillman and Dr. Chance because their opinions were not consistent with their findings as well as the reports of other examining physicians. Dr. Hillman reported that the plaintiff as having moderate limitations in sitting, but then reported that she could perform a job requiring mainly seated activities. (T. 174-75). Furthermore, there was no support for Dr. Hillman's assessment of limits in lifting/carrying and standing/walking due to knee pain because x-rays had shown only mild degenerative changes in her knees and normal in her ankles. (T. 322, 323). Dr. Chance reported that the plaintiff could lift less than ten pounds, could stand for at least two hours and could sit about six hours. (T. 275-78). Ultimately, both Dr. Chance and Dr. Hillman concluded that the plaintiff *could* perform "some" work and neither ever labeled her totally disabled. Thus, it was reasonable for the ALJ not to accept Dr. Hillman or Dr. Chance's assessments to the extent that it reflected significant limitations and it was within her discretion to resolve genuine conflicts in the record.

Moreover, the ALJ reasonably concluded that the plaintiff's testimony regarding her limitations was not credible. It is well within the discretion of the adjudicator to evaluate the credibility of the plaintiff's testimony and render an independent judgment in light of the medical and other evidence regarding the true extent of such symptomology. Mimms v. Secretary of Health and Human Services, 750 F.2d 180, 186 (2d Cir. 1984). Here, the

plaintiff was non-compliant with her medication and failed to appear for many scheduled appointments. ( T. 174, 284, 292, 298). Furthermore, the plaintiff misreported information regarding her cocaine abuse. For instance, in November 2001 the plaintiff denied any alcohol or drug abuse to Dr. Thomassen. (T. 170). But she reported to Dr. Patil in October 2003 that she had been using drugs for the last seven years. (T. 342). In addition, on July 16, 2004, she testified that the final time she used cocaine was in January 2004. (T. 364). However in April 2004, she admitted to using cocaine each week. (T. 334). Moreover, two separate examiners noted that she could be malingering in her attempt to receive SSI benefits and one of these examiners was concerned when she sought Valium on the visit and noted that it could be a bad sign of drug-seeking behavior. (T. 335, 338, 340).  Thus, the ALJ reasonably concluded that the plaintiff's allegations concerning the nature of her impairments, related symptoms and limitations, and inability to work was not credible.

The plaintiff alleges that the ALJ erred in determining that she could return to her past relevant work. However, it was reasonable for the ALJ to find that she could return to her past relevant work because several physicians agreed that she could. Dr. Balderman concluded that he could put no limitations on the plaintiff's physical ability. (T. 161). Dr. Thomassen found that the plaintiff could perform rote tasks and follow simple directions. (T. 172). In addition, the state agency physicians

reports also conclude that the plaintiff could return to her job as a cleaner. The state agency psychiatrists concluded that the plaintiff could perform unskilled work, could understand, carry out, and remember simple instructions and could use appropriate judgment to make simple decisions. (T. 190). The state agency physician concluded that the plaintiff had the capacity to lift up to fifty pounds, stand, and walk six hours and sit for six hours. (T. 197). Thus, it is reasonable that the ALJ found that the plaintiff could return to her past relevant work based on the opinions of several doctors in the record.

Finally, the ALJ did not fail to consider the combined effects of each impairment. She considered all of the plaintiff's impairments and based her overall decision on several doctors' opinions and the hearing testimony. Thus, I find that the ALJ did not err, but properly evaluated the plaintiff's ability to perform and gave it the weight within her discretion she felt was appropriate together with other evidence provided.

Therefore, I find that the ALJ's conclusion is supported by substantial evidence in the record and that the record, read as a whole, presents sufficient evidence to support the conclusions reached by ALJ Gregg.

## CONCLUSION

For the reasons set forth above, I do find substantial evidence in the record to support the ALJ's conclusion that the

plaintiff is not eligible for SSI.  Accordingly, the Commissioner's motion for judgment on the pleadings is granted.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         June 19, 2006